UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **23-14022-CR-CANNON/MAYNARD**

18 U.S.C. § 1349
18 U.S.C. § 982

UNITED STATES OF AMERICA

vs.

PAMALA ANN SEYMOUR,

       Defendant.
_____/

FILED BY ____KAN____ D.C.

May 11, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Medicare Program

1. The Medicare Program ("Medicare") was a federal health care program that provided free or below-cost health care benefits to individuals who were sixty-five years of age or older or disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency the Center for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was subdivided into multiple program "parts." Medicare Part A covered health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Medicare Part B covered physician services and outpatient care, including an

individual's access to durable medical equipment ("DME"), such as orthotic devices and wheelchairs.

3. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

## Durable Medical Equipment

4. DME was equipment designed for everyday or extended use and for a medical purpose, such as orthotic devices, wheelchairs, prosthetic limbs, wheelchairs, and oxygen concentrators.

5. DME companies, physicians, and other health care providers that provided services to beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application, CMS Form 855S, which contained a certification that stated:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to me or to the organization listed in Section 1B of this application. The Medicare laws, regulations, and program instructions are available through the fee-for-service contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions[,] including, but not limited to, the Federal Anti-Kickback Statute, 42 U.S.C. section 1320a-7b(b)[.]
>
> I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

6. CMS Form 855S also required applicants to disclose to Medicare any individual or organization with an ownership interest, a financial interest, or managing control of a DME supplier. This included: (i) all individuals and organizations with five percent or more of an ownership stake, either direct or indirect, in the DME supplier; (ii) all individuals or organizations

with a partnership interest in the DME supplier, regardless of the percentage of ownership; (iii) all organizations with "managing control" over the DME supplier; and (iv) all "managing employees."

7. CMS Form 855S defined "managing employee" as "a general manager, business manager, administrator, director, or other individual who exercises operational or managerial control over, or who directly or indirectly conducts the day-to-day operations" of the DME supplier, "either under contract or through some other arrangement, whether or not the individual is a W-2 employee" of the DME supplier.

8. CMS Form 855S also required the disclosure of "Adverse Legal Actions" against individuals or organizations with an ownership interest, partnership interest, or managing control of a DME supplier. CMS Form 855S defined "Adverse Legal Actions" as, among other things, any federal or state felony conviction within the previous ten years, and any felony or misdemeanor conviction, under federal or state law, relating to the unlawful manufacture, distribution, prescription, or dispensing of a controlled substance.

9. This disclosure obligation was necessary, in part, because, under 42 C.F.R. § 424.530, CMS could deny a provider's enrollment in the Medicare program if, among other reasons, the "provider, supplier, or any owner or managing employee of the provider or supplier was, within the preceding 10 years, convicted . . . of a Federal or State felony offense that CMS determines is detrimental to the best interests of the Medicare program and its beneficiaries."

10. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A health care provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

11. Enrolled Medicare providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers were required to abide by the Federal Anti-Kickback Statute and other laws and regulations. Providers were given access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

12. Medicare reimbursed DME companies and other health care providers for items and services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare electronically via interstate wire communication, either directly or through a billing company.

13. A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the DME provided to the beneficiary, the date the DME was provided, the cost of the DME, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

14. A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

15. A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary for the treatment of the beneficiary's illness or injury, prescribed by a licensed physician, and actually provided to the beneficiary as billed.

### The Defendant and Related Entities

16. Need A Brace LLC was a Florida limited liability company located at 25 Harbour

Isle Drive W, PH 1, Fort Pierce, Florida, that purportedly provided DME to Medicare beneficiaries.

17. Orthotics Now, Inc. was a Florida limited liability company located at 201 S 2nd Street, Suite 207, Fort Pierce, Florida, that purportedly provided DME to Medicare beneficiaries.

18. Defendant **PAMALA ANN SEYMOUR** was a resident of St. Lucie County, Florida, and an owner and operator of Need A Brace, LLC and Orthotics Now, Inc.

19. Co-Conspirator 1 was a resident of St. Lucie County, Florida.

20. Co-Conspirator 2 was a resident of Palm Beach County, Florida.

21. Co-Conspirator 3 was a resident of Broward County, Florida.

## COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as if fully set forth herein.

2. From in or around December 2016, and continuing through in or around September 2021, in St. Lucie County, in the Southern District of Florida, and elsewhere, the defendant,

**PAMALA ANN SEYMOUR,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and others known and unknown to the Grand Jury, to commit an offense against the United States, that is,

(a) in connection with the delivery of and payment for health care benefits, items, and services, to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section

care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in violation of Title 18, United States Code, Section 1347; and

        (b)    to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3.    It was the purpose of the conspiracy for the defendant and her co-conspirators to unlawfully enrich themselves by, among other things: (a) offering and paying kickbacks and bribes to marketers, including Co-Conspirator 2, in exchange for doctors' orders for DME prescribed to Medicare beneficiaries, and other documentation necessary to submit claims to Medicare (collectively, "doctors' orders"), without regard to the medical necessity for the prescribed DME or whether the DME was eligible for Medicare reimbursement; (b) submitting and causing the submission of false and fraudulent claims, via interstate wire communications, to Medicare; (c) concealing the submission of false and fraudulent claims to Medicare; and (d) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and her co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4. **PAMALA ANN SEYMOUR**, Co-Conspirator 1 and their co-conspirators submitted and caused Need A Brace, LLC and Orthotics Now, Inc. to submit the Medicare enrollment paperwork for Need A Brace LLC and Orthotics Now, Inc. as DME providers.

5. **PAMALA ANN SEYMOUR**, Co-Conspirator 1, and their co-conspirators paid kickbacks and bribes to marketers, including Co-Conspirator 2, for the referral of doctors' orders that were procured through kickbacks, were not medically necessary, and were otherwise ineligible for reimbursement by Medicare

6. **PAMALA ANN SEYMOUR**, Co-Conspirator 1, and their co-conspirators submitted and caused Need A Brace, LLC and Orthotics Now, Inc. to submit false and fraudulent claims, via interstate wire communications, to Medicare in the approximate amount of $19,000,000, of which approximately $10,000,000 was paid, for DME that was procured through the payment of kickbacks and bribes, was not medically necessary, and was otherwise not eligible for reimbursement by Medicare.

7. In 2018, **PAMALA ANN SEYMOUR** sold Need A Brace, LLC and Orthotics Now, Inc to Co-Conspirator 3 and other co-conspirators but continued to participate in the conspiracy, by, among other things, providing compliance assistance.

8. **PAMALA ANN SEYMOUR** and their co-conspirators used the proceeds of the fraud for their personal use and benefit and to further the conspiracy.

All in violation of Title 18, United States Code, Section 1349.

## **FORFEITURE ALLEGATIONS**

1. The allegations contained in this Indictment are hereby realleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **PAMALA ANN SEYMOUR**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1349, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense, pursuant to Title 18, United States Code, Section 982(a)(1), (7).

3. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to the forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth at Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____
FOREPERSON

_____
MARKENZY LAPOINTE
UNITED STATES ATTORNEY

_____
LINDSEY LAZOPOULOS FRIEDMAN
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: _____

v.

PAMALA ANN SEYMOUR,

_____/
              Defendant.

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of counts _____

**Court Division** (select one)
   ☐ Miami   ☐ Key West   ☒ FTP
   ☐ FTL   ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take __6__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:
   (Check only one)      (Check only one)
   I   ☐ 0 to 5 days   ☐ Petty
   II   ☒ 6 to 10 days   ☐ Minor
   III   ☐ 11 to 20 days   ☐ Misdemeanor
   IV   ☐ 21 to 60 days   ☒ Felony
   V   ☐ 61 days and over
6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

By: _____
Lindsey Lazopoulos Friedman
Assistant United States Attorney
FL Bar No. 091792

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** __PAMALA ANN SEYMOUR_____

**Case No:** _____

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349
* **Max. Term of Imprisonment:** Twenty (20) years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or twice the gross gain or loss from the offense.

*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.